JUDGMENT ENTRY.
This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3(A).
Following a bench trial, defendant-appellant, Tony Marshall, was convicted of eight counts of receiving stolen property pursuant to R.C.2913.51(A). The evidence showed that Detective Craig Ball of the Cincinnati Police Department purchased a stolen computer from AAA Unison Computers, which Marshall owned and operated. The police subsequently executed a search warrant at Marshall's business and recovered numerous stolen computers. Many of the recovered computers had their serial numbers removed.
Though Marshall claimed that the computers were brought to his business for repairs, no paperwork at all existed to show who owned the computers or what repairs were to be made. The owners of the computers all testified that they had not given Marshall permission to possess their computers. Diana Carter testified that she bought a used computer from Marshall. When she took it home, she found information belonging to a University of Cincinnati student on it. She contacted the police and the police determined that the student's computer had been stolen.
Marshall presents four assignments of error for review, which we address out of order. In his third assignment of error, he states that the trial court erred in allowing the state to present testimony regarding a hearsay statement by Rodney Anderson. The record shows that the state called Anderson, who was serving prison terms for burglary, receiving stolen property, and misuse of a credit card, as a witness. After the court declared Anderson a hostile witness, the state asked him if he had told Ball that he had sold stolen computers to Marshall's business and if Marshall knew that they had been stolen. Anderson stated that he did not remember making those statements and that he was high on marijuana when he spoke with Ball. Ball testified that Anderson did not appear to be high when he talked to him and that Anderson had stated that he and others he knew had taken computers to Marshall's store on a regular basis.
Much of Ball's testimony came into evidence without objection to its substance. When Marshall finally did object, the court sustained his objections. When defense counsel objected to the prosecutor's reference to Anderson's statement in the prosecutor's closing argument, the trial court overruled that objection. The court stated, "You let much of that get in before you objected. When you did object, I sustained it, but much of this was already in the record before then."
Marshall's failure to object precludes him from raising the issue on appeal unless plain error exists. On the record before us, we cannot hold that but for any error in the admission of the evidence, the result of the trial clearly would have been otherwise, particularly given the strength of the evidence against Marshall and the trial court's failure to make any reference to Anderson's statement in finding Marshall guilty of the charged offenses. Therefore, the error did not rise to the level of plain error. See State v. Wickline (1990), 50 Ohio St.3d 114,552 N.E.2d 913; State v. Hirsch (1998), 129 Ohio App.3d 294,717 N.E.2d 789; State v. Burrell, 1st Dist. No. C-030803, 2005-Ohio-34. We overrule Marshall's third assignment of error.
In his first assignment of error, Marshall states that the trial court erred in overruling his Crim.R. 29 motions for a judgment of acquittal. He contends that the state failed to prove that he knew or had reasonable cause to believe that the computers had been obtained through commission of a theft offense.
In his second assignment of error, Marshall states that "[t]he trial court erred in construing bailment for the purpose of repair as reception, retention, or disposition of the property of another as contemplated [by] O.R.C. Section 2913.51." He argues that customers left the stolen computers at his business for repair, creating a bailment. Thus, he contends, he only had physical possession of the computers, not actual dominion and control, which is an essential element of the offense of receiving stolen property. See State v. Jackson (1984),20 Ohio App.3d 240, 485 N.E.2d 778. These assignments of error are not well taken.
R.C. 2913.51(A) states that "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." When determining whether a defendant knew or had reasonable cause to believe that property in his possession had been stolen, courts look to the following factors: (1) the defendant's unexplained possession of the merchandise; (2) the nature of the merchandise; (3) the frequency with which such merchandise is stolen; (4) the nature of the defendant's commercial activities; and (5) the relatively limited time between the thefts and the recovery of the merchandise. State v. Davis (1988),49 Ohio App.3d 109, 550 N.E.2d 966; State v. Thomas, 1st Dist. No. C0-10724, 2002-Ohio-7333.
The charges in this case involved laptop computers, items that are easily and frequently stolen. All the computers had been reported stolen in the weeks previous to the date police found them in Marshall's store. Three were recovered from Marshall's store within a week of their reported thefts. Marshall sold the stolen computer to Carter the day after it had been reported stolen.
Though Marshall claimed that computers had been brought to his store by seemingly legitimate customers, he had no invoices or receipts to show that he had purchased the computers, nor did he have repair tags or other paperwork to suggest that he ran a legitimate repair business. Even Marshall's own expert witness and business associate testified that when a customer brought a computer in for repairs, he would prepare a repair tag on which he would record the date and the customer's information. The expert also stated that if a transaction was suspicious, he would take the customer's name and driver's license number to protect himself against future problems. Additionally, all the stolen computers recovered from Marshall's business were in working condition, and no evidence showed that they had been repaired or needed repairs.
Under the circumstances, the evidence was such that reasonable minds could have reached different conclusions as to whether each of the material elements of each of the eight counts of receiving stolen property had been proved beyond a reasonable doubt. Therefore, the trial court did not err in overruling Marshall's Crim.R. 29 motions for a judgment of acquittal. See State v. Bridgeman (1978), 55 Ohio St.2d 261,381 N.E.2d 184; State v. Klein, 1st Dist. Nos. C-040176 and C-040224, 2005-Ohio-1761; Thomas, supra.
We do not find Marshall's bailment argument to be persuasive. It would require that the trier of fact have believed Marshall's claim that seemingly legitimate customers had brought the computers in for repair. But the state presented evidence to rebut that claim, and his credibility was in question. Issues as to the credibility of evidence are for the trier of fact to decide. State v. Bryan, 101 Ohio St.3d 272, 2004-Ohio-971,804 N.E.2d 433. Accordingly, we overrule Marshall's first and second assignments of error.
In his fourth assignment of error, Marshall contends that evidence was insufficient to show that the value of the stolen items was over $500. All the offenses for which Marshall was convicted were fifth-degree felonies, which required the state to prove that the value of the property involved was more than $500, but less than $5,000. R.C. 2913.51(C). He contends that because the owners of the computers only testified as to their purchase prices, the state failed to demonstrate the fair market value of the stolen computers on the date of the offenses. Thus, his expert witness's testimony that used computers had little value, typically $150 to $450, was unrebutted. This assignment of error is not well taken.
The state must present some evidence of value, however minimal. Statev. Loch, 10th Dist. No. 02AP-1065, 2003-Ohio-4701. Courts determine the value of stolen property pursuant to R.C. 2913.61. R.C. 2913.61(D) sets forth three different classifications of property with three separate methods for valuing that property. Only one classification applies to any particular item. State v. Overholt, 9th Dist. No. 02CA0108-M, 2003-Ohio-3500.
R.C. 2913.61(D)(1), which refers to heirlooms and other things with intrinsic worth to their owners, does not apply in this case. R.C.2913.61(D)(2) states that "[t]he value of personal effects and household goods, and of materials, supplies, equipment, and fixtures used in the profession, business, trade, occupation, or avocation of its owner, which property is not covered under division (D)(1) of this section and which retains substantial utility for its purpose regardless of its age or condition, is the cost of replacing the property with new property of like kind an quality."
R.C. 2913.61(D)(3) states that the value of any property not listed in section (D)(1) or (D)(2) is the fair market value. It defines fair market value as "the money consideration that a buyer would give and seller would accept for property or services, assuming that the buyer is willing to buy and seller is willing to sell, that both are fully informed as to all facts material to the transaction, and that neither is under any compulsion to act."
Because the owners of the computers testified to the purchase prices, the state presented some evidence of the replacement value pursuant to section (D)(2). Marshall argues that section (D)(2) did not apply to seven of the charges, because the state failed to prove that the property was used in the profession, business, trade, occupation or avocation of its owner. This argument ignores much of the language of this section. Computers, which are so commonplace in this day and age, are household goods, and laptop computers have such an intimate association with their owners as to be personal effects. See State v. Adams (1988),39 Ohio St.3d 180, 529 N.E.2d 1264; State v. Chaney (1984),11 Ohio St.3d 208, 465 N.E.2d 53; State v. Cook (Sept. 8, 1987), 12th Dist. No. CA87-04-009. At least one court has held that computers are valued under section (D)(2). See State v. Toler, 2nd Dist. No. 19183, 2002-Ohio-7375.
But another court has valued a computer under section (D)(3) without much explanation. See State v. Corley (Apr. 26, 1999), 5th Dist. No. 1998CA00169. We need not reach the issue of which section applies because we hold that even if the computers were valued under section (D)(3), the state presented evidence to show that the fair market value of each computer was over $500. Despite Marshall's claim to the contrary, his expert did not testify that the computers were worth between $150 and $450. The state, on the other hand, presented the owners' testimony about each computer's purchase price. Most of them were recent purchases with a cost of at least $1,100. The jury could have reasonably inferred that the computers had a fair market value of over $500. See State v. Brown (Nov. 7, 1996), 4th Dist. No. 95CA869. The only offense where value based solely on the purchase price might have been questionable given the age of the computer was that involving the computer belonging to the college student that was sold to Carter. But the evidence showed that Marshall had sold that computer to Carter for $849. Thus the evidence showed that its fair market value was over $500.
Under the circumstances, we hold that the state's evidence, when viewed in a light most favorable to the prosecution, could have convinced a rational trier of fact that the value of the property involved in each of the offenses was between $500 and $5000. Therefore, the evidence was sufficient to support Marshall's convictions for receiving stolen property as a fifth-degree felony. See Sate v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492. We overrule Marshall's fourth assignment of error.
We note that Marshall has also raised the issue of whether his sentence was appropriate under Blakely v. Washington (2004), ___ U.S. ___,124 S.Ct. 2531, and United States v. Booker (2005), ___ U.S. ___,125 S.Ct. 738, through a notice of additional authorities to be presented at oral argument. Our review of the record shows that the trial court based Marshall's sentence primarily on his previous convictions, including unsuccessful paroles. Thus, his sentence was proper based on the prior-conviction exception to Booker and Blakely. Any other findings the trial court made that were not proper were harmless error. See Statev. Lowery, 160 Ohio App.3d 138, 2005-Ohio-1181, 826 N.E.2d 340; Statev. McIntosh, 1st Dist. No. C-040280, 2005-Ohio-1760. Consequently, we affirm Marshall's convictions and sentences.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Gorman and Painter, JJ.