[Cite as *State v. Seely*, 2024-Ohio-2409.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Patricia A. Delaney, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 23 CAA 07 0039 |
| JOSHUA SEELY | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:     Appeal from the Delaware County Court of Common Pleas, Case No 22 CRI 090518

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     June 24, 2024

APPEARANCES:

For Plaintiff-Appellee

MELISSA A. SCHIFFEL
Delaware County Prosecutor
BY: KATHERYN L. MUNGER
Assistant Prosecutor
145 North Union Street, 3rd Floor
Delaware, OH 43015

For Defendant-Appellant

APRIL F. CAMPBELL
Campbell Law, LLC
546 Metro Place South, Ste. 100
Dublin, OH 43017

*Gwin, J.,*

**{¶1}**    This case involves the theft of equipment from a construction trailer located on rural property in Delaware County, Ohio. Defendant-appellant Joshua Seely ["Seely"] contends that the state failed to introduce substantial, credible evidence upon which a jury could reasonably conclude that he stole the property, and that the stolen property was worth in excess of $1,000.00. Because we find the state introduced circumstantial evidence, in addition to video surveillance footage of the theft, upon which the jury could find that it was Seely who stole the property worth more than $1,000.00, we affirm the judgment of the Delaware County Court of Common Pleas.

*Facts and Procedural History*

**{¶2}**    On February 2, 2022, a construction trailer was parked on a ten-acre plot of undeveloped land on Trenton Road, Sunbury, Delaware County, Ohio. A video camera positioned outside the trailer captured a pick-up truck parked in the roadway at the end of the driveway. 2T. at 185[1]. Two people were seen getting out of the truck. 2T. at 186. The pickup truck was described as potentially an old Ford truck. Id. At 5:32 a.m. two individuals were captured on black and white surveillance video entering the construction trailer. State's Exhibit 2, 4, 5, 7, 8-12; 2T. at 178-181. The break-in was reported to the Delaware County Sherriff's Office. 2T. at 175-176. The suspects were described as white men. One was wearing a hooded jacket and jeans and was wearing a flat-billed ball cap. 3T. at 303. The other was wearing a ball cap, a hooded sweatshirt, jeans, white tennis shoes, and a mask. Id.

---

[1] For clarity, the transcript of Seeley's jury trial will be referred to as "__T.__" signifying the volume and page number.

{¶3} The owner of the trailer described the property that was stolen as a generator, a heater burner kit, a propane tank, the connection line for that unit, and a strap kit. 2T. at 199; 3T. at 301. A picture of the Coleman 6250 generator that was stolen was entered into evidence. State's Exhibit 20. The replacement value of the generator alone was placed at $1,200.00. 2T. at 200.

{¶4} Deputies created a Facebook post about the break-in on the Delaware County Sherriff's Office Facebook page. 3T. at 304; 306; State's Exhibit 25. Included in that post was a description of "a silver pick-up truck, possibly a Ford 150." 3T. at 306 - 307. Through further investigation, deputies were able to obtain a license plate number of a silver Ford 150 pickup truck. Id. at 311. The license plate was registered to Seely's co-defendant, F.L. Id. at 312. Deputies initially identified F.L. as the person who could be seen in the video surveillance footage as the unmasked individual holding the flashlight. 3T. at 345. However, after interviewing Seely in March 2022, the deputy changed her mind and identified Seely as the person holding the flashlight. Id. at 323. Seely denied any involvement in the break-in. State's Exhibit 26; 3T. at 317-324.

{¶5} During the investigation, Wi-Fi location data placed F.L.'s cell phone near the incident location at the time of the theft. 3T. at 335-336. Text messages retrieved from Seely's phone suggested that he and F.L. planned to meet up that night to "make money". 3T. at 383. Google records showed that Seely had photographs of the Coleman Generator Model 6250, that had been sent in a text message to F.L. Id. at 340-341; 366. Text messages were exchanged indicating F.L.'s needing to get some money after he installed a washer and dryer at his grandparents' home. Id. at 256. The next text messages came the day after the break-in at around 6:00 p.m. Id. at 256. That text from

Seely concerned his leaving a lotto ticket in F.L.'s truck. Id. at 256. Further, law enforcement found texts in which Seely was showing, "$275." Id. at 258. The message continues, "New they are 599 used I see them for as low as 300." Id. To which a reply of "o.k." was received. Id.

{¶6} On September 15, 2022, Seely was indicted with co-defendant F.L. for one count of Breaking and Entering in violation of R.C. 2911.13(B) / (C), a felony of the fifth degree, and one count of Theft, in violation of R.C. 2913.02(A)(1) / (B)(2), also a felony of the fifth degree.

{¶7} During deliberations, the jurors asked for clarification on "breaking and entering with the value of $1,000.00 or more. On page 10, clarify the additional issue of value." 3T. at 433. The jurors further asked, "And can we be a hung jury on one of the counts?" Id. The trial judge referred the jurors to the definitions previously given and further, provided the jurors with the deadlocked jury instructions. 3T. at 436-439.

{¶8} The jury found Seely "not guilty" of Breaking and Entering, but "guilty" of Theft, with a finding that the state proved that the value of the items stolen was over $1,000.00. On June 9, 2023, the trial judge sentenced Seely to a prison term of nine month's consecutive to prison sentences imposed by Franklin County, and restitution in the amount of $2,360.

*Assignments of Error*

{¶9} Seely raises two Assignments of Error,

{¶10} "I. THE STATE'S EVIDENCE OF SEELY'S [sic.] OF HIS THEFT, HIS IDENTITY, AND THE VALUE OF THE PROPERTY WAS LEGALLY INSUFFICIENT AS A MATTER OF LAW.

{¶11} "II. THE TRIAL COURT'S DECISION TO FIND SEELY GUILTY OF THEFT SHOULD BE REVERSED, BECAUSE THE EVIDENCE WEIGHED MANIFESTLY AGAINST CONVICTION."

### I & II.

{¶12} Although Seely has presented two Assignments of Error, he provides only a single argument. Therefore, we too shall consider his First and Second Assignments of Error together.

### Standard of Appellate Review – Sufficiency of the Evidence

{¶13} The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. 99 (2013); *Hurst v. Florida*, 577 U.S. 92 (2016). The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court. *State v. Walker*, 2016-Ohio-8295, ¶30; *State v. Jordan,* 2023-Ohio-3800, ¶13. "This naturally entails a review of the elements of the charged offense and a review of the state's evidence." *State v. Richardson*, 2016-Ohio-8448, ¶13.

{¶14} When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4, (1997)*; *Walker*, 150 Ohio St.3d at ¶30. "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential

elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. *State v. Poutney*, 2018-Ohio-22, 97 N.E.3d 478, ¶19. Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Murphy*, 91 Ohio St.3d 516, 543 (2001), *quoting Jenks* at paragraph two of the syllabus; *Walker* 150 Ohio St.3d at ¶31. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 2006-Ohio-5283, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430 (1997); *State v. Montgomery*, 2016-Ohio-5487, ¶74.

**Issue for Appellate Review**:  *Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind that Seeley was guilty beyond a reasonable doubt of Theft in an amount greater than or equal to $1,000*

{¶15}  Seely was convicted of one count of Theft in violation of R.C. 2913.02 (A)(1),

(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

(1) Without the consent of the owner or person authorized to give consent

**{¶16}** If the value of the stolen property is one thousand dollars or more and is less than seven thousand five hundred dollars, Theft is a felony of the fifth degree. R.C. 2913.02(B)(2).

**{¶17}** Seely does not argue that a theft did not occur; rather, he argues that the state failed to prove that he stole the equipment and that the value of the stolen items was more than $1,000.00.

**After viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind that Seely was guilty beyond a reasonable doubt of obtaining or exerting control over the property without the consent of the owner of the trailer.**

**{¶18}** The state has the burden to prove every element of the crime charged beyond a reasonable doubt, including the identity of the person who committed the crime. *State v. Smith*, 2021-Ohio-2866, (4th Dist.), ¶ 90 *citing State v. Bailey*, 2017-Ohio-2679 (2nd Dist.), ¶ 18; State *v. Tate*, 2014-Ohio-3667, ¶ 15 (Internal citations omitted). However, there is no general requirement that the defendant must be visually identified in court by a witness. *State v. Smith*, 2020-Ohio-3618(5th Dist.), ¶ 13; *State v. Lawwill*, 2008-Ohio-3592(12th Dist.), ¶ 11, *appeal not allowed*, 2008-Ohio-6813; *State v. Collins*, 2013-Ohio-488(8th Dist.), ¶ 19; *Cleveland v. Williams*, 2015-Ohio-1739(8th Dist.), ¶ 25. Direct or circumstantial evidence is sufficient to establish the identity of the accused as the person who committed the crime. *Smith* at ¶ 13.

**{¶19}** Circumstantial evidence is defined as "'testimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved.'" *State v.*

*Nicely*, 39 Ohio St.3d 147,150 (1988), *quoting* Black's Law Dictionary (5ᵗʰ Ed. 1979). "Circumstantial evidence and direct evidence inherently possess the same probative value." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4 (1997).* "'[C]ircumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. McKnight*, 2005-Ohio-6046, ¶ 75, *quoting State v. Heinish*, 50 Ohio St.3d 231, 238(1990).

{¶20} In the case at bar, ample circumstantial evidence existed to allow the jury to conclude that Seely obtain or exerted control over the property from the trailer without the consent of the owner of the trailer.

{¶21} The jurors were able to observe Seely during his trial. The jurors reviewed the video surveillance tapes and the photographs made from those tapes. State's Exhibit 2, 4, 5, 7, 8-12. Text messages retrieved from Seely's phone contained pictures of the stolen generator and a discussion of the value of that item. F.L.'s cell phone was tracked to the vicinity of the trailer at the time of the break-in. Seely texted F.L. that he left his lottery ticket in F.L.'s truck, indicating that recently Seely was with F.L. in his pick-up truck.

{¶22} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Seely did commit the crime of theft. We hold, therefore, that the state met its burden of production regarding identification of Seely as one of the thieves for the crime of theft for which Seely was indicted and, accordingly, there was sufficient evidence to submit the charge to the jury and to support Seely's conviction.

**After viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind beyond a reasonable doubt that the value of the stolen items exceeded one thousand dollars**

{¶23} In relevant part, R.C. 2913.61 provides:

(A) When a person is charged with a theft offense… that involves property or services valued at one thousand dollars or more, property or services valued at one thousand dollars or more and less than seven thousand five hundred dollars… the jury or court trying the accused shall determine the value of the property or services as of the time of the offense and, if a guilty verdict is returned, shall return the finding of value as part of the verdict. In any case in which the jury or court determines that the value of the property or services at the time of the offense was one thousand dollars or more, it is unnecessary to find and return the exact value, and it is sufficient if the finding and return is to the effect that the value of the property or services involved was one thousand dollars or more, was one thousand dollars or more and less than seven thousand five hundred dollars…

(D) The following criteria shall be used in determining the value of property or services involved in a theft offense:

(2) The value of personal effects and household goods, and of materials, supplies, equipment, and fixtures used in the profession, business, trade, occupation, or avocation of its owner, which property is not covered under division (D)(1) of this section and which retains substantial

utility for its purpose regardless of its age or condition, is the cost of replacing the property with new property of like kind and quality.

**{¶24}** In the case at bar, the Coleman 6250 generator, as well as the heater burner kit, propane tank, the connection line for that unit and a strap kit were "materials, supplies, equipment, and fixtures used in the profession, business, trade, occupation, or avocation of its owner," and therefore its value, for purposes of R.C. 2913.02(B) was its replacement cost. *State v. Adams,* 39 Ohio St.3d 186, 187(1988). Generally, the price at which property is held for sale is *prima facie* evidence of its value. *See*, R.C. 2913.61(E)(1). Id.

**{¶25}** In the case at bar, the owner of the property testified that the replacement cost of the items stolen was over $1,000.00. 2T. at 200; 203-204. A victim's testimony is sufficient to prove value of the stolen property for purposes of a theft charge. *State v. Milem*, 2016-Ohio-1096 (2nd Dist.), ¶ 18; *State v. Bartolomeo*, 2009-Ohio-3086 (10th Dist.), ¶25, *citing State v. Lockhart*, 115 Ohio App.3d 370, 374 (8th Dist. 1996) (holding victim's testimony was sufficient to prove value of stolen property for purposes of theft charge); *State v. Noble*, 2015–Ohio–652 (12th Dist.), ¶22 (finding victim's testimony regarding the value of property stolen was sufficient to elevate theft offense to a fifth-degree felony); *State v. Jones,* 2003-Ohio-445(5th Dist.), ¶ 41 (same); *State v. Allen*, 2003-Ohio-229(5th Dist.), ¶15 (same).

**{¶26}** Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that the value of the stolen property exceeded one thousand dollars and was less than seven thousand five hundred dollars. We hold, therefore, that the state met its burden of production regarding the value of the stolen property for the theft for which Seely was

indicted and, accordingly, there was sufficient evidence to submit the charge to the jury and to support Seely's conviction.

**Standard of Review – Manifest Weight**

{¶27} The term "'manifest weight of the evidence'. . . relates to persuasion." *Eastley v. Volkman*, 2012-Ohio-2179, ¶19. It "concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387(1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 102 at n.4 (1997)*; *State v. Martin*, 2022-Ohio-4175, ¶ 26.

{¶28} As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d at 386–387; *State v. Issa*, 93 Ohio St.3d 49, 67 (2001).

{¶29} Weight of the evidence addresses the evidence's effect of inducing belief. *Thompkins*, at 386-387; *State v. Williams,* 2003-Ohio-4396, ¶83. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. *State v. Jordan*, 2023-Ohio-3800; *Thompkins* at 387, *citing Tibbs v. Florida*, 457 U.S. 31, 42(1982) (quotation marks omitted); *State v. Wilson,* 2007-Ohio-2202, ¶25, citing *Thompkins.*

{¶30} In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Eastley,* 2012-Ohio-2179 at ¶ 21. "The underlying rationale of giving deference to the findings of the trial court rests with the

knowledge that the [trier of fact] is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80 (1984).

{¶31} When there is conflicting testimony presented at trial, a defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented. "'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Seasons Coal Co., Inc* at fn. 3, *quoting* 5 Ohio Jur.3d, Appellate Review, §603, at 191-192 (1978); *In re Z.C.,* 2023-Ohio-4703, ¶14.

{¶32} The interplay between the presumption of correctness and the ability of an appellate court to reverse a verdict based on the manifest weight of the evidence has been stated as follows, "'Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.'" *Seasons Coal Co.,* 10 Ohio St.3d at 80, *quoting C.E. Morris Co. v. Foley Construction Co.*, 54 Ohio St.2d 279, 280 - 281. See, also, *Frankenmuth Mut. Ins. Co. v. Selz*, 6 Ohio St.3d 169, 172 (1983); *In re Sekulich,* 65 Ohio St.2d 13, 16 (1981). "The central question is whether 'there is *substantial* evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt.' (Emphasis sic.)  *State v. Getsy*, 84 Ohio St.3d 180, 193-194, 702 N.E.2d 866 (1998), *citing State v. Eley*, 56 Ohio St.2d 169, 383 N.E.2d 132 (1978), syllabus, *superseded by constitutional amendment on other grounds*

*as stated in Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668(1997)."* State v. *Nicholson,* 2024-Ohio-604, ¶71. A manifest-weight challenge should be sustained "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins,* 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, (1st Dist. 1983); *Nicholson* at ¶71.

**{¶33}** Further, to reverse a jury verdict as being against the manifest weight of the evidence, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required pursuant to Article IV, Section 3(B)(3) of the Ohio Constitution. *Bryan-Wollman v. Domonko*, 2007-Ohio-4918, ¶ 2-4, *citing Thompkins* at paragraph four of the syllabus.

**Issue for Appellate Review**:  *Whether the jury clearly lost their way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered*

**The Jury Did Not Lose Its Way Concluding that Seely was Guilty of Theft and That the Value of the Stolen Property Exceeded $1,000.00**

**{¶34}** The jury saw the video surveillance footage, the still photographs taken from the footage, and was able to observe Seely during the trial. The jurors further saw the witnesses subjected to cross-examination during trial and heard Seely's attorney's arguments concerning the lack of fingerprints, the lack of cell phone tracking data showing Seely in the area of the theft, and the fact the deputy initially identified someone else as being depicted in the black and white video surveillance footage. While Seely was free to argue that he did not commit the theft, the jury rejected his contention.

**{¶35}** Finally, upon careful consideration of the record in its entirety, we find as set forth above, there is substantial evidence on which the jury could properly conclude beyond a reasonable doubt that Seeley obtain or exerted control of property worth one thousand dollars or more and less than seven thousand five hundred dollars from the trailer without the consent of the owner of the property. *State v. Nicholson,* 2024-Ohio-604, ¶75. Therefore, in light of the evidence, as well as the record in its entirety, we find the jury clearly did not lose its way concluding that Seely was guilty of theft, a felony of the fifth degree. We find that the jury did not disregard or overlooked compelling evidence that weighed against conviction.

**{¶36}** Seely's First and Second Assignments of Error are overruled.

**{¶37}** The judgment of the Delaware County Court of Common Pleas is sustained.

By Gwin, J.,

Delaney, P.J., and

Baldwin, J., concur